# Richmond.

BURWELL v. BURWELL AND OTHERS.

December 8, 1904.

1. UNDUE INFLUENCE—*Presumption*—*Parent and Child.*—There is no presumption of invalidity as to a bond executed by a mother to her son for services rendered by him as her agent eight years prior to the date of the bond. If fraud or undue influence is relied upon as a defense, it must be proved as a fact as in other cases, and the burden is on the party alleging it. Even a gift from a parent to a child is not presumed to be invalid, though it may be shown that actual undue influence was exercised.

2. USE AND OCCUPATION OF LAND—*Taxes Paid by Occupant.*—It is error to charge a child with the rental value of his parent's land occupied by him after the parent's death, without giving him an opportunity to show what taxes and other proper charges, if any, paid by him he is entitled to have set-off against the use of the land during that period.

Appeal. from a decree pronounced by the Circuit Court of Franklin county, in a suit in chancery, wherein appellant, suing on behalf of himself and other creditors of his mother, was the complainant, and the appellees were the defendants.

*Reversed.*

The opinion states the case.

*Dillard & Lee,* for the appellants.

*S. & M. Griffin,* for the appellees.

BUCHANAN, J., delivered the opinion of the court.

The appellant instituted a creditor's suit against the estate of his mother, Mary E. Burwell, deceased. His claim was evidenced by a bond for $4,000, given, as stated in the bond, for services rendered his mother from January 1, 1869, until December 31, 1876, under a contract between the appellant and his mother for the management of her farm and business. That agreement was terminated by the mother at the expiration of the year 1876, and the appellant, who was unmarried, afterwards, and until her death in the year 1897, remained with her under an arrangement between them, by which he was to cultivate her lands, and each receive a certain portion of the crops.

The bond of the appellant was executed, as appears from its date, on May 14, 1884. The defense chiefly relied on to defeat the appellant's recovery is that he did not keep and perform his agreement with his mother, and was therefore not entitled to the compensation therein provided for, and for which the bond was given, and that he procured the execution of the bond by false representations to, and improper or undue influence over, her.

Upon a hearing of the cause, the Circuit Court disallowed his claim. From that decree this appeal was allowed.

The appellant insists that the Circuit Court erred in holding that such confidential relations existed between him and his mother when the bond was executed as imposed upon him the duty of showing that its execution was procured in good faith after a full disclosure of all the facts and circumstances affecting the transaction, and in the absence of all undue influence.

There are certain relations in life, which, from the peculiar confidence necessarily subsisting, courts of equity feel bound to guard and protect. These are guardian and ward; trustee and *cestui que* trust; attorney and client; principal and agent; parent and child, and the like. Transactions between persons

occupying such confidential relations are viewed with jealous vigilance by courts of equity. 1 Story's Eq. Jur., sections 307 to 323.

While the natural and just influence which a parent has over a child renders it peculiarly important for courts to watch over and protect the interests of the latter, and to set aside contracts and conveyances, whereby benefits are secured, by children to their parents, if they are not entered into with scrupulous good faith, and are not reasonable under the circumstances, the same rule does not apply where contracts and conveyances are made by which benefits are secured by the parent to the children. Instead of such contracts and conveyances being guarded with a jealous eye, they will generally be presumed to be free from suspicion, and the party who claims that they were procured by undue influence must generally prove it.

Mr. Pomeroy says, in discussing the transactions between parent and child, that "A child is presumed to be under the exercise of parental influence as long as the dominion of the parent lasts. Whilst that dominion lasts it lies upon the parent maintaining the gift to disprove the exercise of parental influence, by showing that the child had independent advice, or in some other way. When the parental influence is disproved, or that influence has ceased, a gift from a child stands upon the same footing as any other gift, and the question to be determined is, whether there was a deliberate unbiased intention on the part of the child to give to the parent. Where the positions of the two parties are reversed; where the parent is aged, infirm, or otherwise in a condition of dependence upon his own child, and the child occupies a corresponding relation of authority, conveyances conferring benefits upon the child may be set aside. Cases of this kind turn plainly upon the exercise of actual undue influence, and not upon any presumption of invalidity. A gift from parent to child is certainly not presumed

to be invalid." 2 Pom. Eq. Jur., sec. 962. And *a fortiori* there is no such presumption as to a contract based upon a valuable consideration.

In the case of *Greer* v. *Greers*, 9 Gratt. 332, a man in extreme old age conveyed the whole of his estate to one of his sons, and this court held that as he had sufficient capacity to understand what he was doing, and there was no direct proof of fraud or undue influence, the improvidence and injustice of the act in disinheriting his other children did not give rise to a presumption of an abuse of confidence, or justify the court in setting aside the conveyance.

In the case of *Orr* v. *Pennington*, 93 Va. 268, 273, 24 S. E. 928, where a father, a month before his death, had conveyed substantially all of his property to one of his four children, and it was sought to set aside the conveyance upon the ground that the grantee had procured its execution by the exercise of undue influence over the grantor when his mind was weakened by the infirmities of age and disease, the rule, as stated by Mr. Pomeroy and quoted above, that such cases turn upon the exercise of actual undue influence of the child over the parent, and not upon any presumption of invalidity, was approved, and followed.

While the bond in this case was executed for services rendered as agent, they were rendered under an agreement which had been terminated more than eight years before; long after the relation of principal and agent created by it had ceased to exist, and when they had the right to deal with each other in the same manner as other persons. 2 Pom. Eq. Jur. 959.

We are of opinion, that there were no such confidential relations existing between the appellant and his mother when the bond was executed as raised any presumption of its invalidity. The burden, therefore, of showing that the appellant had procured the execution of the bond by fraud or undue influence was upon the appellees.

Their evidence consisted of the depositions of two brothers and two sisters of the appellant. Their testimony was for the most part hearsay or irrelevant, and upon exception that portion of it was excluded by the Circuit Court. They knew nothing of the circumstances under which .the bond was executed. Indeed, they did not know that it had been executed until after the mother's death. The evidence does not prove that any undue influence was exercised, or any false representation made, to induce the mother to execute the bond. There is no pretence that she was not a woman of vigorous mind, in full possession of all her faculties at the date of the bond and for years afterwards,—up to the time of her death, so far as the record shows. She made her will in the year 1889, added codicils to it, and lived until 1897, thirteen years after the bond was executed.

Upon all the facts and circumstances of the case, we are of opinion that the bond of the appellant is a valid claim against his mother's estate, and that the exceptions to the report of the commissioner, which so found, should have been overruled, and the report confirmed.

The action of the court in charging the appellant with the rental value of the lands of his mother's estate held by him since her death is assigned as error.

The answer filed in the case prays that if the appellant's bond or any part thereof is held to be a valid debt against the estate of his mother, he shall be required to render an account of his transactions as manager of her lands both during her life, and since her death.

The commissioner, in ascertaining the value of the decedent's lands, took evidence of their rental value, and among other witnesses he called to testify upon that point was the appellant. Upon that evidence the court entered a decree against him for the rental value of the lands after his mother's death, without giving him an opportunity to show what taxes and other proper

Opinion.

charges, if any, paid by him, he was entitled to have set off against the use of the land during that period.   This was error.

For this error, and the disallowance of the appellant's debt, the decree appealed from must be reversed to that extent, and in other respects affirmed, and the cause remanded for further proceedings, in which such accounts may be ordered as are necessary to ascertain what sums, if any, the appellant is indebted to his mother's estate for the use of her lands.

*Reversed.*