# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## RIXEY AND ANOTHER v. RIXEY AND OTHERS.

### January 12, 1905.

1. UNDUE INFLUENCE—*Conveyance from Parent to Child—Presumption—Case in Judgment.*—Conveyances from parent to child are not guarded with a jealous eye, but are generally presumed to be free from suspicion, and the party who claims that they were procured by undue influence must prove that actual undue influence was exercised. It will not be presumed. In the case in judgment a conveyance was made by a mother, seventy-eight years of age, to two of her daughters. There is considerable disparity between the consideration stated in the deed and the value of the property conveyed, but the deed contains a covenant of support for life, secured by a lien reserved. There was no mental weakness other than that incident to the age of the mother. The deed was in accord with a will made four years before, and which has since been admitted to probate; the grantees looked after the affairs of their mother, and shielded and watched over her with affectionate interest and care, and there was no proof of actual fraud or undue influence. Under these circumstances the deed should be upheld.

2. COUNSEL FEES.—Fees to counsel cannot be allowed by the court when there are no funds under the control of the court properly applicable to that purpose.

Appeal from a decree pronounced by the Circuit Court of Fauquier county, in a suit in chancery, wherein Eleanora Rixey, by her next friend, was the complainant, and the appellants and others were the defendants.

*Reversed.*

The opinion states the case.

*E. S. Turner* and *Munford, Hunton, Williams & Anderson,*
for the appellants.

*J. K. M. Norton* and *Louis C. Barley,* for the appellees.

KEITH, P., delivered the opinion of the court.

James M. Rixey, as next friend of his mother, Eleanora
Rixey, filed a bill in the Circuit Court of Fauquier county
against his sisters, Mollie E. Rixey, Fannie A. Coles, and
Tucker S. Coles, her husband, and Richard Anderson, the
object of which was to have a deed from Eleanora Rixey to
Fannie A. and Mollie E. Rixey, annulled upon the ground that
it was obtained by fraud and undue influence.

The defendants filed their answer denying the allegations
of the bill, and upon the issues thus made evidence was taken,
and the Circuit Court, by its decree, set the deed aside for "in-
adequacy of consideration and undue influence"; and thereupon
Mollie E. Rixey and Fannie A. Coles have brought the case to
this court upon appeal.

At the instance of the defendants a rule was awarded, re-
quiring James M. Rixey to appear and show by what authority
he instituted this suit as the next friend of his mother. Upon
this subject affidavits were filed and there was much discussion
at the bar. Without intimating any opinion upon this branch
of the case, or upon the demurrer to the bill, but assuming that
the plaintiff had a right to sue in the manner and form which
he pursued, and that the demurrer was properly overruled, we
shall dispose of the controversy upon its merits.

Many witnesses were examined, and their testimony is com-
prised in a very bulky record. Thoroughly to discuss the details

of this evidence would be tedious and uninstructive... The more important facts are as follows:

Mrs. Rixey was seventy-eight years of age when the deed in question was executed by her. She had a son, who is the plaintiff as her next friend; a daughter, Mrs. Lake; and the appellants, Mollie and Fannie, who is now Mrs. Coles. The appellants were capable and energetic business women. They looked after the affairs of their mother, who while sound in mind was enfeebled by the weight of years, and shielded and watched over her with affectionate interest and care. On the 27th of August, 1898, Mrs. Rixey executed a deed, which recites: "This deed made and entered into this 27th day of August, 1898, between Eleanora Rixey, party of the first part, and Fannie A. Rixey and Mollie E. Rixey, parties of the second part;

"Whereas, the said party of the first part is indebted to the said parties of the second part in the sum of three thousand ($3,000) dollars, with interest from June, 1891, which said debt is evidenced by a certain deed of trust, of record in the clerk's office of the County Court of Fauquier county, in Deed-Book 1893-94, page 341; and,

"Whereas, the said parties of the second part, daughters of the said party of the first part, have attended to all of the business of the said party of the first part, and have cared for and attended to her; and,

"Whereas, the said parties of the second part hereby covenant and agree to and with the said party of the first part, which is evidenced by their acceptance of this deed, to provide for and support the said party of the first part for life;

"Now, therefore, this deed witnesseth: That for and in consideration of the above debt, services and covenant to support, and of the sum of five ($5.00) dollars in hand paid the said party of the first part by the said parties of the second

part, the receipt whereof is hereby acknowledged, the said Eleanora Rixey has granted, bargained and sold, and by these presents does grant, bargain, sell and convey unto the said Fannie A. Rixey and Mollie E. Rixey, their heirs and assigns forever, with general warranty, all that certain tract or parcel of land  .  .  .  .  containing five hundred and twenty-five acres.  .  .  .

"This land hereby conveyed is subject to a deed of trust to secure the sum of one thousand dollars, and there is excepted from this conveyance about eighty acres of land, conveyed by the said party of the first part to R. C. Rixey.  .  .  .

"The said party of the first part hereby reserves a vendor's lien upon the land hereinbefore conveyed, in order to secure to her an adequate support for and during her natural life."

It appears that Mrs. Rixey had theretofore made a will, to the following effect:

"Being of sound mind and memory, I, Eleanora Rixey, of Fauquier county, Virginia, do make this my last will and testament.

"1st. I wish my funeral expenses and just debts paid.

"2nd. I give to my son, James M. Rixey, ten dollars.

"3rd. I give to my daughter, Florence V. Lake, ten dollars.

"4th. All the rest and residue of my estate, real, personal, and mixed, of whatever kind and wheresoever situate, I give, bequeath and devise to my daughters, Fannie A. Rixey and Mollie E. Rixey, to them and their heirs forever.

"In testimony whereof I have hereunto set my hand and seal this 15th day of January, 1894."

Here are two solemn instruments emanating from Mrs. Rixey, one dated the 15th of January, 1894, and the other August 27, 1898, both disposing of her property in substantially the same manner. The will was, of course, revocable, but was

Opinion.

never revoked, and has been probated as her last will and testament. The two instruments taken together show a fixed and settled purpose upon the part of Mrs. Rixey with respect to the disposition of her property. She was a woman of sound mind, the only infirmity under which she suffered being such as is inseparable from advancing years, and there is no evidence that either the will or the deed was procured by actual fraud or undue influence.

It is earnestly contended, however, that by long intercourse between the mother and daughters, she had become dependent upon them, and had fallen wholly under their influence, and that they being strong, active, energetic and capable, exercised a dominant influence over their mother, who had become enfeebled by age.

The subject has been recently considered by this court, and the opinion of Judge Buchanan, in *Burwell* v. *Burwell, ante* p.    , 49 S. E. 68, renders any discussion of the law upon the subject unnecessary.

In the case just cited it is said: "There are certain relations in life, which, from the peculiar confidence necessarily subsisting, courts of equity feel bound to guard and protect. These are guardian and ward, trustee and. *cestui que trust,* attorney and client, principal and agent, parent and child, and the like. Transactions between persons occupying such confidential relations are viewed with jealous vigilance by courts of equity. 1 Story's Eq. Jur., sections 307 to 323.

"While the natural and just influence which a parent has over a child renders it peculiarly important for courts to watch over and protect the interests of the latter, and to set aside contracts and conveyances whereby benefits are scured by children to their parents, if they are not entered into with scrupulous good faith, and are not reasonable under the circumstances; the same rule does not apply where contracts and conveyances

are made by which benefits are secured by the parent to the child. Instead of such contracts and conveyances being guarded with a jealous eye, they will generally be presumed to be free from suspicion, and the party who claims that they were procured by undue influence must generally prove it.

"Mr. Pomeroy says, in discussing the transactions between parent and child, that 'a child is presumed to be under the exercise of parental influence as long as the dominion of the parent lasts. Whilst that dominion lasts it lies upon the parent maintaining the gift to disprove the exercise of parental influence by showing that the child had independent advice, or in some other way. When the parental influence is disproved, or that influence has ceased, a gift from a child stands upon the same footing as any other gift, and the question to be determined is whether there was a deliberate unbiased intention on the part of the child to give to the parent. Where the positions of the two parties are reversed; where the parent is aged, infirm, or otherwise in a condition of dependence upon his own child, and the child occupies a corresponding relation of authority, conveyances conferring benefits upon the child may be set aside. Cases of this kind turn plainly upon the exercise of actual undue influence, and not upon any presumption of invalidity; a gift from parent to child is certainly not presumed to be invalid.' 2 Pom. Eq. Jur., sec. 962. And *a fortiori* there is no such presumption as to a contract based upon a valuable consideration.

"In the case of *Greer* v. *Greers*, 9 Gratt. 332, a man in extreme old age conveyed the whole of his estate to one of his sons, and this court held that as he had sufficient capacity to understand what he was doing, and there was no direct proof of fraud or undue influence, the improvidence and injustice of the act in disinheriting his other children did not give rise to a presumption of an abuse of confidence, or justify the court in setting aside the conveyance.

"In the case of *Orr* v. *Pennington*, 93 Va. 268, 273, 24 S. E. 928, where a father, a month before his death, had conveyed substantially all of his property to one of his four children, and it was sought to set aside the conveyance upon the ground that the grantee had procured its execution by the exercise of undue influence over the grantor, when his mind was weakened by the infirmities of age and disease, the rule, as stated by Mr. Pomeroy and quoted above, that such cases turn upon the exercise of actual undue influence of the child over the parent, and not upon any presumption of invalidity, was approved and followed."

In this case there is a considerable disparity between the money consideration which passed and the value of the land, but other considerations are recited. It is declared that the parties of the second part have attended to all of the business of the party of the first part, and have cared for and attended to her, and there is a further covenant, for the enforcement of which there is the reservation of a vendor's lien upon the land, that the grantees will care for and support the grantor during the remainder of her life.

Upon the whole case we are of opinion that the mother was capable of contracting; that in the deed culminates a purpose with respect to the disposition of her property which she had long entertained, as is shown by her will duly executed more than four years before the date of the deed; that there is no proof of actual fraud and undue influence; and that the relation between the grantor and grantees and other circumstances of the case are not such as to give rise to a presumption of the invalidity of the deed in question.

The decree of the Circuit Court allows a fee of $500 to the attorneys who filed the bill. This action of the court was, we think, also erroneous, as there is no fund under the control of the court in this case properly applicable to that purpose.

Opinion.

For these reasons we are of opinion that the decree complained of should be reversed, and the cause remanded to the Circuit Court to be further proceeded with in accordance with the views herein expressed.

*Reversed.*