## Richmond.

JENKINS AND OTHERS v. RHODES AND OTHERS.

February 7, 1907.

1. FRAUD—*Undue Influence—Case in Judgment.*—Undue influence, to avoid a deed, must be sufficient to destroy the free agency of the grantor. It must amount to coercion, practically duress. Suggestion and advice do not constitute undue influence; nor does solicitation, unless the party be so worn by the importunities that his will gives away. Earnest entreaty, importunity and persuasion may be employed, but if the influence is not irresistible it is not undue, and its exercise is immaterial, even though it is yielded to. To set aside a deed for undue influence it must be shown to the satisfaction of the court that the grantor had no free will. In the case in judgment the evidence falls short of establishing undue influence exerted over the grantor.

2. FRAUD—*Undue Influence—Conveyance from Parent to Child—Presumption.*—Contracts and conveyances whereby benefits are conferred by a parent on a child are generally presumed to be free from suspicion, and the party who claims that they were secured by undue influence must, as a rule, prove it.

3. FRAUD—*Deed by Husband Immediately Before Marriage—Presumption.*—A man about to be married may dispose of his estate as he pleases, provided it is done with proper motives, and without intention to defraud his intended wife. Such a conveyance, whatever may be the circumstances, even though made the moment before marriage, is *prima facie* good, and becomes bad only upon the imputation of fraud. Although the settlement may be voluntary and not disclosed to the intended wife it is not, therefore, necessarily fraudulent. The courts will consider any facts which tend to show that no fraud was intended. In the case in judgment there was no secrecy about the execution of the deed, and the evidence fails to disclose any fraudulent purpose on the part of the grantor.

Appeal from a decree in chancery of the Circuit Court of

Isle of Wight county.   Decree for defendants.   Complainants appeal.

*Affirmed.*

The opinion states the case.

*Ro. W. Withers* and *Bradford W. Kilby,* for the appellants.

*J. U. Burgess* and *Jeffries & Lawless,* for the appellees.

HARRISON, J., delivered the opinion of the Court.

The bill in this case was filed by Josiah L. Jenkins and Irving K. Jenkins, two grandsons of Jethro H. Rhodes, and Susan P. Rhodes, the widow of Jethro H. Rhodes, for the purpose of having set aside two deeds made by Jethro H. Rhodes on the 8th day of January, 1890, one conveying to his son, J. E. Rhodes, a tract of land containing about one hundred acres, and the other conveying to his son, J. P. Rhodes, a tract of land containing about fifty acres, upon the ground that these conveyances were made as the result of the fraudulent and undue influence of the grantees therein upon the grantor.   It is charged that if these deeds are allowed to stand the grantees will have secured unto themselves greater shares of the estate of the grantor than they are justly entitled to, to the great disadvantage and injury of the complainants, and in fraud of their rights.

On the day the deeds were executed Jethro H. Rhodes was married to the female complainant, Susan P. Rhodes, who was prior to her marriage Susan P. Spivey; and it is further charged on her behalf that the unlawful and fraudulent procurement of such deeds was without the knowledge and consent of Susan P. Spivey, and in fraud of her marital rights.

Charles J. Rhodes, another grandson of the grantor in these deeds, was named as a party plaintiff in this bill, but he has filed a petition in the case saying that he never authorized anyone to bring suit for him attacking the validity of the deeds in

question, and that he desires to be made a party defendant and to have his petition treated as an answer to the bill, the allegations of which he denies *in toto,* saying that he has known the defendants, J. E. and J. P. Rhodes, all of his life and believes them to be morally incapable of doing what they are charged with in the bill.

The bill makes as parties defendant the grantees in the two deeds mentioned, and all of the other heirs at law of Jethro H. Rhodes, twelve in number, two of whom were infants. The defendants, J. E. and J. P. Rhodes, the grantees in the deeds, filed a joint and separate answer in which they utterly deny every material allegation of the bill, and emphatically affirm that no unlawful or fraudulent influence was exercised by them, or anyone for them, upon their father to procure his execution of the deeds in question; that they wish to be understood as categorically denying every sentence contained in the bill which charges fraud, force or deceit, or any other wrong. The other ten adult heirs, who are made parties defendant, file a joint and several answer, in which they deny each and every allegation of the bill tending to charge fraud on the part of J. P. and J. E. Rhodes in connection with the execution of the deeds mentioned therein. The two infant defendants answer by guardian *ad litem,* and commit their rights and interests to the protection of the court.

A mass of evidence was taken, and the cause submitted to the learned judge of the Circuit Court for decision, who, upon mature consideration, was of opinion that the complainants had failed to prove the allegations of their bill. A decree was, therefore, entered, dismissing the bill, and from that decree this appeal has been taken.

The record shows that in the year 1890 Jethro H. Rhodes, the father or grandfather of all the parties to this suit, except the female complainant, Susan P. Rhodes, who was his widow, was a man eighty-one years of age, who, notwithstanding his years, was in good health, possessed of all his faculties, not

easily influenced, of exceedingly strong mind and great native strength. His attorney says that he could not read or write intelligently, but that he was a man of strong mind and very sound judgment in business matters, and was considered by everybody as being a very good, moral and upright man; saying further, "My opinion of his condition in that respect was that he was a man of more than average strength, intellect and will power, and if anything a little inclined to have his own way about things regardless of the persuasions of other people." It further appears that his circumstances were comfortable, and he was respected as a man of integrity and honesty. His large family of children and grandchildren were well regarded and respected in their several spheres. The defendants, J. E. and J. P. Rhodes, were his only sons, living with their respective families as his nearest neighbors, one within one hundred and seventy-five yards, and the other within less than half a mile, of his residence. It is further shown that a day or two before the deeds in question were executed these two sons learned that their father had secured a license to marry Susan P. Spivey, one of the complainants, a woman of unsavory reputation, who was the mother of two bastard children. The announcement of his proposed marriage to a woman of this character naturally caused his sons great concern and mortification. They feared that she and her associates would be most unpleasant neighbors for their respective families. Under these circumstances J. E. and J. P. Rhodes consulted with their brother-in-law, Irving Jenkins, who it plainly appears is the instigator of this litigation, and the three determined to, and did, go together and request the ministers in the neighborhood not to perform the ceremony, and then went to the home of their father and made an earnest effort to pursuade him to give up what they regarded as a most unfortunate alliance. They sought to impress upon him "that all of his children were leading fair and honorable lives and trying to make the best of themselves," and "that it would be a reproach and disgrace upon the family" for him

to marry Susan Spivey. They urged upon him the shame of such a marriage and the danger, especially after his death, of his house becoming the harbor of disorderly persons. When they found that he could not be influenced and that nothing could dissuade him from the marriage it was suggested (the preponderance of the evidence shows by Irving Jenkins) that as it might be very disagreeable for his sons, after his death, to have such a woman living so near them, he make J. E. Rhodes a deed to the land which he had turned over to him more than thirty years before, and that he sell to J. P. Rhodes, or someone, his home place, reserving a life interest, and taking a bond for the purchase price, payable at his death. This proposition was agreed to, the father saying that he had always intended to make J. E. Rhodes a deed to the place which he had used and occupied. The evidence shows that Irving Jenkins fixed the price to be paid by J. P. Rhodes for the fifty acres at $750.00, which was agreed upon. It is established by the evidence that this sum was all the land was worth. In pursuance of an understanding between the parties J. P. Rhodes had the deeds prepared at once by an attorney, and the next morning, after being read to the grantor, they were executed by him without a word of objection.

The deed of J. P. Rhodes reserves a life estate to the grantor, and the evidence shows that he remained in the complete use and enjoyment of the property up to the time of his death, which was nearly fifteen years after the deed was made, and no credible witness shows that he expressed during those years any purpose to have the deeds set aside or any dissatisfaction with their execution. As already seen, the deed to J. P. Rhodes was for a full and adequate consideration, and the bond for $750, executed at the time by him, for the purchase money, payable at the death of his father, has since passed into the hands of the administrator of Jethro H. Rhodes, who has collected it and holds the proceeds ready for distribution. The deed to J. E. Rhodes reserves a life estate in the grantor to a part of the land thereby

conveyed. The evidence satisfactorily shows that the deed to J. E. Rhodes was merely the execution of a long standing promise by the father to convey the land described therein to the son. The land conveyed had been paid for by years of service to the father; had been for more than thirty years in the possession of the grantee, who had put improvements upon it, and had the exclusive use and enjoyment of it during all that time.

Before undue influence can be made the ground for setting aside a deed it must be sufficient to destroy free agency on the part of the grantor; it must amount to coercion—practically duress. Suggestion and advice, addressed to the understanding and judgment, do not constitute undue influence, nor does solicitation, unless the party be so worn by the importunities that his will gives way. Earnest entreaty, importunity and persuasion may be employed, but if the influence is not irresistible it is not undue, and its existence is immaterial, even though it is yielded to. *Greer* v. *Greers,* 9 Gratt. 330, 333; *Orr* v. *Pennington,* 93 Va. 268, 24 S. E. 928; *Hammond* v. *Welton,* 106 Mich. 244, 64 N. W. 25; *Hamilton* v. *Smith,* 57 Ia. 15, 10 N. W. 276, 42 Am. Rep. 39. To set aside a deed for undue influence it must be shown to the satisfaction of the court that the party had no free will, but stood *in vinculis*. *Conley* v. *Nailor,* 118 U. S. 127, 30 L. Ed. 112, 6 Sup. Ct. 1001.

The evidence shows conclusively that Jethro H. Rhodes was very far from being *in vinculis*. The persuasion and entreaty of his sons that he should not consummate his proposed marriage was, under the circumstances, right and proper. He, however, resisted all appeals, never once wavering in his purpose to marry Susan Spivey. With respect to the execution of the deeds, the evidence abundantly shows that there was no improper or undue influence exerted upon the grantor to induce him to make the deeds. The reasons making it proper for him to do so were set forth, and he seemed to recognize their force at once. The only attempt to show undue influence is found in the

deposition of Irving Jenkins, the son-in-law, who is shown to have suggested to the grantor the advisability of conveying his property and the method by which it should be done.

Contracts and conveyances ·by which benefits are secured by a parent to a child are generally presumed to be free from suspicion, and the party who claims they were secured by undue influence must generally prove it. *Burwell* v. *Burwell,* 103 Va. 314, 49 S. E. 68; *Rixey* v. *Rixey,* 103 Va. 414, 49 S. E. 586.

It is further contended that the execution of the conveyances in question was a fraud upon the marital rights of Susan P. Spivey, the intended wife of Jethro H. Rhodes.

The presence of the widow of Jethro H. Rhodes as a party plaintiff in this suit is shown to be due to the influence of Irving Jenkins, the son-in-law, who admits that he caused the suit to be brought, and told the widow that if she would unite with his boys in the suit he would pay all of her costs if the suit should go against her.

A man about to be married may dispose of his estate as he pleases, provided it is done with proper motives and without intention to defraud his intended wife. Such a conveyance, whatever may be the circumstances, and even the moment before marriage, is *prima facie* good, and becomes bad only upon the imputation of fraud. 1 White & Tudor Lead. Cas. in Eq. 605; *Gregory* v. *Winston,* 23 Gratt. 102.

In the last-named case Judge Staples says the question which arises upon all the cases is whether the evidence is sufficient to raise fraud. Citing *Strathmore* v. *Bowes,* 1 Ves. Jr. 23.

As to what is sufficient evidence of fraud in such cases the authorities are not agreed. But it is agreed that although the settlement is voluntary and not disclosed it is not, therefore, necessarily fraudulent. The courts will consider any facts which tend to show that no fraud was intended. *Gregory* v. *Winston, supra.* In this case the learned judge further says: "It is clear that an obligation founded on a valuable consideration, executed pending a treaty for marriage, cannot be set aside merely be-

cause it is concealed from the husband. The case of *Blanchet* v. *Foster,* 2 Ves. Sen. 264, recognizes the distinction between such an obligation and a mere voluntary settlement. There a bond was given by a woman about to marry, and at her request it was concealed by the obligee from the intended husband. It was held, nevertheless, he could not be relieved against it; Lord Hardwick saying, 'If a woman about to marry parts with a portion of her property, or gives a security or assignment, they are relievable against in this court; but when a debt is contracted for a valuable consideration, though concealed from the husband, it is no fraud on the marriage.' The decision in *Crump* v. *Dudley,* 3 Call 509, obviously proceeded upon this ground, though the reasons of the court are not given. In these cases the transaction must of course be *bona fide*."

In the case at bar there was no secret about the execution of the deeds in question. The subject was discussed and the instructions given for the preparation of the deeds in the presence of a number of witnesses. The intended wife knew of the opposition to the marriage, and must have known that the execution of the deeds was the subject of consideration, for it is shown by a witness for the complainants that on the afternoon of the day before the marriage she asked him if it were true that Mr. Rhodes had "done away with his property."

It was said by the Master of the Rolls, in *England* v. *Downs,* 2 Beav. R. 522, 528: "The equity which arises in cases of this nature depends upon the peculiar circumstances of each case as bearing upon the question whether the facts proved do or do not amount to sufficient evidence of fraud." *Greer* v. *Greers, supra; Gregory* v. *Winston, supra; Orr* v. *Pennington, supra.*

The circumstances of the case at bar forbid the conclusion that in making the deeds in question Jethro H. Rhodes was actuated by other than proper motives, or that he intended thereby to defraud or deceive his intended wife.

For these reasons the decree appealed from must be affirmed.

*Affirmed.*