WILLIAM SILVERTHORN and Others *v.* J. McKINSTER and Others, Heirs of THOMAS SILVERTHORN, deceased.

1. A power to sell, unshackled by particular directions for its execution, may be executed by a parol sale.

2. A parol sale under such power, by two of three executors, subsequently ratified by the third, is valid.

3. Such sale, partly executed by possession, passes an equitable interest to the vendee, of which one of the executors may become the purchaser for himself, provided there is no *mala fides* in the original sale.

4. Such executor, being solvent and not intending fraud, may use the notes taken from the executors' vendee, in payment of his purchase-money, to pay him for his own repurchase of the land; and such use of them will not work an abrogation of the original sale, remitting the land to its former ownership, in the absence of a manifest intent.

5. Where the descent of land is broken, and the estate vested in executors with power to sell, leaving to legatees but an interest in the proceeds, their remedy, in case of neglect or refusal of executors to execute the power, is by removal of them and appointment of other trustees. Without the co-operation of all in interest, ejectment would seem to be out of the question.

ERROR to the Common Pleas of Erie.

*Sept.* 26.   This was an action of ejectment brought by J. McKinster and others, heirs of Thomas Silverthorn, deceased, against William Silverthorn and others, to recover an undivided fifth part of a certain tract of land, containing twelve acres.

William Silverthorn, who was the grandfather of the plaintiffs and defendants, died in 1813 seised of the land in controversy, which by his will he directed to be sold for the payment of debts and legacies, and the surplus, if any, to be divided among his five children.   Of that will he appointed two of his sons, Isaac and Abraham, and one Thomas Miles, executors, who took upon themselves the execution of the trust.   He left five children—Thomas, the father of the plaintiffs below, Abraham, James, Isaac, the father of the defendants below, and Elizabeth.

The plaintiffs having proved their descent from the testator, and the possession of the defendants, and given in evidence the will, rested.

The substance of the evidence offered by the defendants was this. Shortly after the death of the testator, two of the executors, Isaac and Abraham Silverthorn, sold the land in controversy to one Robert Burns, by parol, for about $700, of which $100 was paid down, and for the balance Burns gave his notes, for $100 each, payable at intervals of a year.   Though the other executor, Miles, according to Burns's testimony, had nothing to say in the transaction, and Burns did not know he was an executor until Miles told him so afterwards, yet, according to the testimony of the executor Abraham Silverthorn, Miles, the other executor, assented to the sale.

In pursuance of this sale Burns took possession, made repairs on the mill, erected a new distillery, and remained in possession some five or six years, when, about the year 1819 or 1820, he sold it by parol to Isaac Silverthorn before mentioned, and delivered possession.   Isaac gave Burns for the property $100 in cash and the notes which were held against him by the executors for the unpaid purchase-money.   From the time of this purchase, Isaac continued in possession until his death in 1846, when, making no testamentary disposition of it, this property descended to his children, the defendants below.

It appeared that Isaac bought of Burns exclusively on his account.   And Abraham Silverthorn testified that his fifth part of the amount, for which the property was sold to Burns, was paid to

him, and his impression was, that the heirs were settled with and paid their shares.

The defendants requested the Court to charge the jury on the following points:

1. If the jury believe from all the evidence that the executors of William Silverthorn made a parol sale of the twelve acres and mill in said William Silverthorn's will mentioned, to Robert Burns, and that Burns took possession of the said premises in pursuance of said sale, paid the executors a part of the purchase-money and made improvements thereon, such sale is a good and valid sale, and invested said Burns with an equitable title to said land, and consequently the plaintiffs are not entitled to recover in this action.

2. By the terms of William Silverthorn's will, the twelve acres claimed by the plaintiffs were specifically disposed of by the testator to pay debts and legacies. The plaintiffs' ancestor being a legatee, they had no title to the *land* in dispute, their remedy is in equity for the legacy to their father.

The Court (CHURCH, President) charged the jury as follows:

"Plaintiffs claim as heirs of Thomas Silverthorn; defendants as heirs and representatives of Isaac Silverthorn. The common source of title is William Silverthorn, Sr., deceased; plaintiffs' ancestor by descent, and defendants' by purchase.

"If the executors of William Silverthorn, Sr., sold to Robert Burns, the latter paying a portion of the purchase-money and taking possession, delivered in pursuance of the contract, and making improvements thereon, such sale was good and conferred a title. If such sale was made by two only of the acting executors, it would not pass any title. If the sale to Burns was by him relinquished to Isaac Silverthorn, one of the executors, in consideration of a repayment of the amount paid towards the purchase or a portion of it, and the cancellation of the notes given for the balance, the title then became vested as before, with the power to sell, in the executors.

"1. We assent to this: the improvements must be substantial and valuable; mere temporary ones, slight and inconsiderable for want of substantiality and character of permanence, will not answer; consequently, if the facts are as here assumed and nothing else prevents, the defendants are entitled to your verdict.

"2. This point is not correct. The law is not as claimed in this point. Until the power, given by the testator to the executors to sell, was executed, the land descended to the heirs. And if the

alleged sale by the executors was for legal cause invalid, or relinquished and given up to them by the purchaser, as heretofore already suggested, the plaintiffs may resort to this kind of action to enforce such rights as they may have."

The verdict was for the plaintiffs, and judgment thereon.

The following assignment of errors was made:

1. The Court erred in that portion of the general charge beginning with the words "If such sale was made," &c., and in all that follows them.

2. And in submitting to the jury facts of which there was no evidence in the case.

3. And in the answer to the second point.

*Marshall*, for the plaintiffs in error.—The executors had power to sell, notwithstanding the will does not designate who shall make the sale: Lloyd's Lessee v. Taylor, 2 Dall. 223. And the sale by two of the executors, with the assent of the third, was valid, and divested the title of the testator's heirs: Taylor v. Adams, 2 S. & R. 534; Zebach v. Smitz, 3 Binn. 69.

The sale by Burns to Isaac Silverthorn being good and valid, not tainted with fraud or collusion, it cannot have the effect of revesting the title in the executors, as affirmed by the Court below. Wallace v. Duffield, 2 S. & R. 521; Painter v. Henderson, 7 Barr, 48.

*Galbraith*, contrà.

1. Burns obtained by his purchase but a mere equity, which could be relinquished, and which the evidence went far to show was relinquished, and nothing more. Upon a relinquishment the title, legal and equitable, would be restored to its original position.

3. The sale here by the executors was invalid, because it did not appear that there was not personal property, the proper fund from which to pay debts and legacies, to discharge all that existed: Frey's Appeal, 8 Watts, 254; because, if the executors had the power to sell, it was not executed so as to pass any title to Burns. All of them should have joined: Johnston v. Bingham, 9 W. & S. 56; Commonwealth v. Canal Commissioners, 9 Watts, 466.; Heron v. Hoffner, 3 Rawle, 393; Kling v. Hummer, 2 Pa. Rep. 349; Bruch v. Lantz, 2 Rawle, 392; and because the sale, if any, was not public, and had not the solemnity of a deed, as it should have had, to make a valid sale: McCreery v. Hamlin, 7 Barr, 87.

The opinion of this Court was delivered by

BELL, J.—The will of William Silverthorn did not specifically designate the persons by whom the power given to sell his lands was to be executed. The law, therefore, devolved it on the executors named: Lloyd's Lessee *v.* Taylor, 2 Dall. 223. And as there was strong evidence that Thomas Miles, one of them, assented to the sale made by the other two to Burns, it was properly left to the jury to say whether, in truth, the sale was made by all the executors; upon the principle that subsequent ratification is equivalent to precedent participation: Taylor *v.* Adams, 2 S. & R. 534. That case shows, too, that a general power to sell given by last will, may be executed by parol, and that such a sale, partly executed by possession, passes an equitable estate to the vendee, recoverable in ejectment notwithstanding the statute of frauds, just as a similar sale by one in his own right, conveys an available title. There is in fact, in this respect, no difference between the exercise of a power to sell unshackled by particular directions for its execution, and a sale made of one's own estate. As, then, under the hypothesis that all the executors joined, Burns was, by the sale, invested with an estate recognised by our laws, there was nothing to hinder him from selling and conveying it to whomsoever he pleased. Nor is there anything in the law, or the transaction itself, to prohibit Isaac Silverthorn from becoming the purchaser. There is no suggestion of *mala fides* in the sale made by the executors to Burns, and it is clear that, in the absence of fraud, one, who has sold an estate as a trustee, may afterwards fairly repurchase it for himself: Painter *v.* Henderson, 7 Barr, 48. Now here all the evidence in the cause is that Burns *sold* to Silverthorn, and that the latter bought for himself whatever interest resided in the former. On this point there is no contradiction. All the witnesses agree. There is no whisper of bad faith, and there is no warrant for saying the transaction was intended as a mere abrogation of the sale to Burns, thus remitting the land to its former ownership. Nor will the employment of Burns's notes by Silverthorn, as a means of paying the purchase-money, work in law such a result in the absence of a manifested intent; as is shown by Wallace *v.* Duffield, 2 S. & R. 524. Those notes were not the property of the decedent's estate. They belonged to his executors, and one of them might lawfully use them to pay his own debt, if he was solvent and no fraud was intended. There is in this case some proof that the legatees, who were entitled to the proceeds of the land sold, or some of them, have actually been paid.

But be this as it may, it is sufficient that the executors are liable to account to those who may be found entitled to the sums for which the notes were taken. It may be further added that the relinquishment of the notes by Silverthorn to Burns, cannot be regarded in itself as any proof of an intent to put everything *in statu quo*, since the latter must have purchased the land at a price enhanced, very nearly, by the difference between the principal sums secured by the notes, and the interest which had accrued on them. But aside from this there was nothing whatever in the cause which could warrant the Court in submitting it to the jury to find whether the object of Burns and Silverthorn was retrocession, and not purchase and sale; an error that must have led to a verdict, which, as it strikes us, is very strongly opposed to the evidence. For this mistake alone, the judgment must be reversed.

But is there not an insuperable objection in the way of the plaintiffs' recovery? The testator directed his mill and twelve acres of the adjoining land to be sold, to pay debts and legacies, and what remained of the purchase-money to be divided among his four sons and daughter. Now, according to our cases of Allison *v.* Willson, 13 S. & R. 332, Miller *v.* Meetch, 8 Barr, 417, Morris *v.* Brenizer, 2 Rawle, 185, Allison *v.* Kurtz, 2 Watts, 185, this direction broke the descent and vested the estate in the executors, leaving to the legatees but an interest in the proceeds. As there is no pretence of an election by all the legatees to accept the land unconverted, their remedy, if the executors have refused or neglected to execute the power, is under our statute authorizing the Courts to remove delinquent trustees and to appoint others in their stead, and to supply vacant trusts. Without the co-operation of all in interest, ejectment would seem to be out of the question.

I deem it unnecessary to notice the objection that there were no debts, beyond the capacity of the personal estate to discharge, further than by saying the presumption, from the directions of the will, is the other way.

Judgment reversed.