THOMAS O'REILEY *vs.* THOMAS BEVINGTON & another.

Essex. November 5, 1891. — November 25, 1891.

Present: ALLEN, KNOWLTON, MORTON, & BARKER, JJ.

*Principal and Agent — Purchase by Agent — Constructive Trust — Mortgage — Redemption.*

The lessee and second mortgagee of real estate, who took the lease for the purposes of control and management, though acting discreetly, was unable to meet an interest payment on the first mortgage, and, after vainly trying to induce the owner, whose presence seriously interfered with the proper management of the estate, to fulfil his agreement to vacate, refused to act for him further. The owner then tried to sell the property by auction and at private sale, but failed to do so; and subsequently, at a foreclosure sale under the first mortgage, the lessee, after telling the owner and his attorney and others present that he was there to protect his own interests, bid off the property. Afterwards the owner accepted from the mortgagee the surplus proceeds of the sale above the mort-

gage and expenses, and gave his receipt therefor. *Held,* on a bill in equity by such owner against the lessee and the first mortgagee to recover the property, that it could not be said, as matter of law, that the relation of the lessee to the owner at the time of the sale was such as to render the sale invalid; and that a master's finding for the defendants should not be disturbed.

BILL IN EQUITY, filed in the Superior Court, against Thomas Bevington and the Andover Savings Bank, for the conveyance of real estate to the plaintiff by Bevington free from a mortgage to the savings bank, and for an accounting. The case was reserved by *Blodgett,* J. for the determination of this court, and was as follows.

A master, to whom the case was referred, found the following facts. The plaintiff was the owner of the real estate in question, which consisted of two parcels of land in Lawrence, with dilapidated buildings thereon, and partially occupied by the plaintiff and by tenants of his, some of whom only paid rent. The premises were subject to a mortgage for $3,500 to the Lawrence Savings Bank, which advertised them for sale on February 4, 1887, under a power contained therein, for breach of condition. The plaintiff, who was old and improvident, after attempting in vain to prevent the contemplated sale, leased the premises, on February 3, 1887, for three years to the defendant Bevington, who was to pay him the "income and rent of said premises according to" an agreement in writing, entered into on the same day between them. This agreement provided that the plaintiff was "to vacate the rooms now occupied by him in said premises, and not meddle or interfere with, in any manner, said premises, or the tenants in the same, except at the request of said Bevington"; and that Bevington was "to sublet said tenements, and collect the rents and profits of the same, and apply said rents and profits towards the payment of the interest on the mortgage of said premises, the taxes, insurance, and repairs, and said O'Reiley's board and necessary expenses, and such other incidental and necessary expenses as may be necessary, and the balance toward the principal of said mortgage note." At the same time the plaintiff executed a mortgage of the premises to the Andover Savings Bank, being the mortgage alluded to in the agreement, to secure a loan of $4,500 procured by Bevington for the plaintiff, with which the sum due the Lawrence

Savings Bank, then amounting with interest and expenses to $4,219, was paid. On the same day the plaintiff also gave to Bevington a second mortgage on the premises, to indemnify him as surety on a bond given by the plaintiff to dissolve an attachment then existing upon them. In all these matters the plaintiff acted under the advice of an attorney. Bevington took possession of the premises under the lease, and up to August 3, 1887, when the first payment of interest to the savings bank fell due, paid out in repairs necessarily made on the premises, and in the support of the plaintiff, and in other expenses properly incurred, more than the balance of the loan left in his hands, and more than the rents and profits which he received, and had no money with which to pay the interest on the mortgage. Meanwhile the plaintiff unreasonably and persistently refused to leave the premises when requested frequently to do so, although Bevington offered to provide suitably for his support at another place ; and his presence there, because of his habits and disposition, seriously interfered with the proper management of the property. The Andover Savings Bank duly advertised the premises for sale for failure to pay the interest, and the plaintiff, upon seeing the same, went to Bevington and inquired what it meant, and was told by him that he had no money with which to pay the interest, that the bank was going to foreclose, and that he had come to the conclusion, from his failure to get the plaintiff to perform his agreement, to have nothing further to do with him.

The plaintiff thereupon employed an attorney to advise and represent him, to whom Bevington afterwards expressed himself in the same way. The plaintiff then tried to sell the premises by public auction, but the attempt to do so was a failure, and later, after entertaining an offer made by an individual and directing his attorney to prepare a deed, he finally decided not to sell it on the terms proposed, and the sale fell through. After the attempt to sell by auction failed, and before the foreclosure, the plaintiff went to Bevington and said that, if he would take hold of the property again, he would vacate the premises at once, but Bevington refused to do so. At the subsequent sale by the savings bank, on November 2, 1887, the plaintiff and his attorney and Bevington were present, and Bevington informed those present there, as well as the plaintiff and

his attorney, that he was there to bid in his own behalf and to protect his own interests, and subsequently bought the property for $4,750. Bevington thereafter, both before taking the deed from the savings bank and afterwards, told the plaintiff and his attorney that, upon payment of the balance due him from the plaintiff and his release as surety, the plaintiff could have the premises for what he bid them off for; but the plaintiff was unable to take advantage of the offer, although Bevington kept it open until January 1, 1888. On November 10, 1887, Bevington, who had already paid the bank $250, took a deed from it and gave it a mortgage on the premises for $4,500, the balance of the price. Bevington by said conveyance acquired absolute title to said premises, unless, as matter of law, from the facts reported, his relation to the plaintiff was of such a nature that it was contrary to equity for him to take and hold said title. At the time of the sale there was due the savings bank from the plaintiff on the mortgage $4,733.50, and on November 17, 1887, the bank paid to the plaintiff the difference between that sum and the amount for which the premises were sold, and took from the plaintiff a receipt signed by him, setting forth that on that date he had "received of the Andover Savings Bank sixteen and $\frac{50}{100}$ dollars, amount received on foreclosure sale of place in Lawrence above amount of mortgage note, interest, and expense." The plaintiff knew what the payment was made for when he took it, but did not know that it would affect any claim he might make to the property. Bevington continued to collect the rents of the premises from August to November, 1887, after he told the plaintiff he would have nothing further to do with him, but only for the purpose of partially indemnifying himself for moneys which he had paid out. In 1888 Bevington ejected the plaintiff from the premises, and proceeded to make and to carry out judiciously certain changes made necessary to render the premises profitable, and on October 10, 1888, gave a second mortgage to the savings bank to secure a loan to him for that purpose.

The plaintiff contended that the relation of Bevington to him was such that the former could not buy the property under the foreclosure sale and hold it adversely to him, but only under a constructive trust for his benefit, and that he was entitled to any

balance of rents and profits over and above what was due from him to Bevington, and to a conveyance of the premises from Bevington discharged from the mortgage to the savings bank of November 10, 1887, subject to the mortgage to Bevington to secure him as surety upon the bond to dissolve the attachment, and subject to the second mortgage to the savings bank.

*D. Saunders & W. S. Knox,* for the plaintiff.

*C. A. De Courcy,* for the defendant Bevington.

KNOWLTON, J. If the defendant Bevington, while in possession of the plaintiff's real estate under the lease and the agreement, having income from the property with which to pay the interest on the mortgage to the Andover Savings Bank, had neglected to pay the interest, and permitted the property to be sold under the mortgage and had bought it, it is very clear that a court of equity, on the application of the plaintiff, would have deprived him of the benefits of the sale. But the master has found that, having acted discreetly and properly in the management of the property, he had no money with which to pay the interest due on the mortgage, and that the plaintiff, in breach of his contract, seriously interfered with the proper management of the real estate by refusing to vacate the rooms which he occupied.

The question before us is presented by the finding of the master that "Bevington by said conveyance acquired an absolute title to said premises, unless, as a matter of law, from the facts reported, his relation to the plaintiff was of such a nature that it was contrary to equity for him to take and hold said title."

We are of opinion that the facts reported are not inconsistent with a finding that his relation at the time of the sale had ceased to be that of an agent or trustee of the plaintiff for the management of the property and the payment of the interest due on the mortgage, and was that of a person acting solely on his own account. He had for a long time been trying to get the plaintiff to perform his agreement, and, being unsuccessful in that, had repeatedly told the plaintiff that he would have nothing more to do with him or his property. The plaintiff, after receiving the notification, had procured an attorney to advise and represent him in the matter, and had employed an auctioneer and attempted to make a sale by public auction before

the foreclosure, but failed in the attempt. He then tried to sell it at private sale, and received an offer for it, which at one time he decided to accept, but afterwards rejected. After this, and before the foreclosure, he "went to Bevington and said that, if he would take hold of the property again, he [the plaintiff] would vacate the premises at once, and Bevington refused to do it." The plaintiff and his attorney were at the foreclosure sale, and the defendant Bevington told them and the others present that "he was there to bid in his own behalf, and to protect his own interests." He was at that time the holder of a second mortgage on the property. All these things indicate that Bevington's relation to the plaintiff as trustee and manager of the property had been terminated, on account of the plaintiff's failure to perform his contract, and that the plaintiff had assumed the management and control of his own affairs. Subsequently, the plaintiff accepted from the Andover Savings Bank the balance of money received from the sale above the mortgage and expenses, and gave his receipt therefor. This was strong evidence of his understanding that Bevington at the time of the sale had ceased to be his representative.

We certainly cannot say, as matter of law, that his relation with Bevington at the time of the sale was such as to render the sale invalid.                              *Bill dismissed.*